UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION


FILED
NOV 14 2011

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| HANSEN MANUFACTURING CORP., | CIV. 11-4030 |
| Plaintiff, | |
| vs. | |
| ENDURO SYSTEMS, INC., d/b/a Intersystems, | ORDER |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending is Enduro Systems' motion to amend.[1]

## BACKGROUND

Defendant, Enduro Systems, Inc. d/b/a Intersystems ("Enduro") wishes to file an Amended Answer and Counterclaim pursuant to FED. R. CIV. P. 15 to allege plaintiff's inequitable conduct as an additional defense and as an additional theory in its counterclaim. Within the time allowed by the Scheduling Order, Enduro requested Plaintiff Hansen Manufacturing Corp. ("Hansen") to agree that Enduro could amend its pleadings. Hansen refused. This timely motion followed.

On February 28, 2011, Hansen sued Enduro for infringement of United States Patent No. 6,044,965 (the '965 patent) titled "Troughing Idlers for Belt Converyors."[2] Hansen claims Enduro

---

[1]Doc. 28.

[2]Doc. 1.

1

is infringing on claim 1 on the '965 patent. Enduro wishes to plead a Fourth Affirmative Defense alleging inequitable conduct and wishes to assert like allegations in its counterclaim for a declaration of unenforceability of the '965 patent. Enduro's proposed allegations are:

<u>Fourth Affirmative Defense---Inequitable Conduct</u>

28. Hansen's claims are barred in whole or in part because the '965 patent is unenforceable due to inequitable conduct during the prosecution of the '965 patent.

29. Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the United States Patent and Trademark office ("PTO"). These individuals include the inventors, the attorneys who prepare and prosecute the application, and every person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventors.

30. For the '965 patent, the individuals who were substantively involved, and therefore had a duty of candor to the PTO, include at least: the inventor, Philip G. Clark and Thomas R. Nesbitt, Jr., attorney for the applicant.

31. United States Patent No. 4,230,222 ("the '222 patent") issued on October 28, 1980, almost twenty years before the application that resulted in the '965 patent was filed. Both the '222 patent and the '965 patent list Philip G. Clark as the named inventor.

32. The '222 patent is entitled "Grain Conveyor Assembly" and, at a minimum, discloses trunking enclosing a conveyor belt for grain. The '222 patent also discloses mounting anti-friction bearings on the exterior of the side walls of the trunking. These elements are claimed in the '965 patent.

33. The '222 is material to the extent that the PTO would not have allowed a claim had it been aware of the undisclosed prior art.

34. Despite the fact that the '222 patent and '965 patent list the same inventor and addresses closely related subject matter, the '222 patent was never made available to the examiner in the prosecution of the '965 patent. The '222 patent is inconsistent with the '965 patent applicant's position of patentability.

35. Clark, as the inventor on both patents, knew of the material nature of the '222 patent. Clark should have known that the '222 patent invalidates the '965 patent because he was necessarily involved in the prosecution of both patents. Because Clark knew of the '222 patent, knew of its material nature, it follows that Clark made a deliberate decision to withhold it. Therefore. he had an intent to deceive the PTO.

2

## ANALYSIS

**<u>Standard.</u>**

The governing standards which apply to this motion to amend have been well stated previously:[3]

### II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, — U.S. —, —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. These requirements apply with equal rigor to pleadings made under Rules 8 and 9 of the Federal Rules of Civil Procedure.

Under Rule 9(b), in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Inequitable conduct, while a broader concept than fraud, must be pled with particularity under Rule 9(b). *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed.Cir.2009). The law of the Federal Circuit, not the law of the regional circuit, applies to the question of whether inequitable conduct has been pled in accordance with Rule 9(b).

Although *Exergen* was decided in the context of a motion for leave to amend to add an inequitable conduct claim, its pleading standard is also used to evaluate the sufficiency of pleadings under Rule 9(b) on motions to dismiss. As outlined in *Exergen*, the substantive elements of inequitable conduct are as follows: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO. .... *Therasense* further heightened the standard for the materiality element of inequitable conduct, holding that the materiality required to establish inequitable conduct is but-for materiality. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.

---

[3]*Abaxis, Inc. v. Cepheid*, 2011 WL 3741501, *3-4 (N.D.Cal.,2011) (quotation marks omitted, punctuation altered, internal Westlaw page numbering omitted, footnote omitted, some internal citations omitted).

3

> In pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Furthermore, in pleading knowledge and intent, which may be averred generally under Rule 9(b), a pleading of inequitable conduct must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.
>
> .... Whether to grant leave to amend a pleading under Rule 15(a) is a procedural matter governed by the law of the regional circuit.

There are recent pronouncements from the Federal Circuit about pleading inequitable conduct. *Exergen* in 2009 involved a motion to amend and *Thersence* in 2011 involved a motion for summary judgment. *Therasense* carefully explains the trilogy[4] of cases from which the doctrine of inequitable conduct sprung. *Therasense* tightened the standards for pleading inequitable conduct so that it should not be considered a garden variety legal theory to be casually asserted even though it is asserted in 80% of patent cases.[5] "... [T]he remedy for inequitable conduct is the atomic bomb of patent law" because it invalidates the entire patent as a result of inequitable conduct regarding only a single claim.[6] "The habit of charging inequitable conduct in almost every major patent case has become an absolute plague. . . . Applicants disclose too much prior art for the PTO to meaningfully consider, and do not explain its significance, all out of fear that to do otherwise risks a claim of

---

[4]*Id.* at 1285 citing *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933), *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), overruled on other grounds by *Standard Oil Co. v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976), and *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945).

[5]*Therasense, Inc. v. Becton, Dickinson and Company*, 649 F.3d 1276, 1289 (Fed. Cir. 2011).

[6]*Id.* at 1288 (internal quotation marks omitted).

inequitable conduct. . . . This court now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public."[7]

**Discussion.**

First the proposed amendment will be examined for conclusory allegations to be eliminated from the analysis because they are conclusory. Then the remaining allegations will be examined to determine whether they satisfy the who, what, where, when, and how particularity standard, and then finally the remaining allegations will be examined for sufficiency of the underlying facts to support the inference of a specific intent to deceive and subjected to the but-for materiality test.

- Paragraphs 28 and 29 are informational, but conclusory. Paragraph 28 alleges Hansen's claims are barred because the '965 patent is unenforceable due to inequitable conduct during the prosecution of the '965 patent. Paragraph 29 alleges there is a duty of candor and good faith in dealing with the United States Patent and Trademark office ("PTO") which applies to the inventors, the attorneys and every person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventors.

- Paragraph 30 identifies the inventor, Philip G. Clark and Thomas R. Nesbitt. Jr, attorney for the applicant. Paragraph 30 is factual and satisfies the "who" consideration.

- Paragraph 31 alleges United States Patent No. 4,230,222 ("the '222 patent") was issued on October 28, 1980, and that both the '222 patent and the '965 patent list Philip G. Clark as the named inventor. This allegation addresses who, what and when.

- Paragraph 32 alleges the '222 patent is entitled "Grain Conveyor Assembly" and describes trunking which encloses a conveyor belt for grain. The '222 patent also discloses anti-friction

---

[7]*Id.* at 1289-90.

bearings which are mounted on the exterior of the side walls of the trunking. These elements are claimed in the '965 patent. These allegations address what and when.

- Paragraph 33 is conclusory: "The '222 is material to the extent that the PTO would not have allowed a claim had it been aware of the undisclosed prior art." This allegation addresses the but-for materiality issue, but fails to disclose the details to explain how it is known the PTO would not have issued the new patent.

- Paragraph 34 alleges the '222 patent was not made available to the examiner in the prosecution of the '965 patent and that the '222 patent is inconsistent with the '965 patent applicant's position of patentability. This allegation is factual insofar as it alleges the '222 patent was not made available to the PTO, but is conclusory insofar as it alleges inconsistency. This factual allegation addresses what, i.e. that the '222 patent was not made available to the PTO.

- Paragraph 35 alleges Clark, as the inventor of both patents, knew of the material nature of the '222 patent. This allegation alleges "Clark should have known that the '222 patent invalidates the '965 patent because he was necessarily involved in the prosecution of both patents" and "because Clark knew of the '222 patent, knew of its material nature, it follows that Clark made a deliberate decision to withhold it. Therefore, he had an intent to deceive the PTO." Paragraph 35 is conclusory. *Therasense* tightened the standard for pleading so that "specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence. . . . Indeed, the evidence must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances. . . . Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found."[8] While no effort is made here to imagine all the inferences which could be drawn, it is

---

[8]*Therasense* at 1290-91 (citations and quotation marks omitted) (italics in original).

6

apparent that deceitful intent is not the only reasonable inference which can be drawn. While Hansen asserts the opinion in paragraph 34 that the two patents are inconsistent, there is no explanation to support the opinion. Under this circumstance another reasonable inference which can be drawn is that the inventor held an opposing opinion, i.e. that he did not believe them to be inconsistent. Or the inventor could believe the previous patent was not material to the PTO's decision. Paragraph 35 does not explain where or how the '965 patent is inconsistent with the '222 patent, and why that inconsistency would make it clear that the PTO would not have issued the '965 patent if it had been aware of the '222 patent. Because there are multiple reasonable inferences that may be drawn, specific intent to deceive cannot be inferred. Likewise, "but for" materiality is not sufficiently pled.

After eliminating the conclusory allegations, the following remains:

1. Paragraph 30, Philip G. Clark, the inventor and Thomas R. Nesbitt. Jr, attorney for the applicant. (The who element.)

2. Paragraph 31, United States Patent No. 4,230,222 ("the '222 patent") was issued on October 28, 1980, and that both the '222 patent and the '965 patent list Philip G. Clark as the named inventor. (The who, what, and when elements.)

3. Paragraph 32, the '222 patent is entitled "Grain Conveyor Assembly" and describes trunking which encloses a conveyor belt for grain. The '222 patent also discloses anti-friction bearings which are mounted on the exterior of the side walls of the trunking. These elements are claimed in the '965 patent. (The what element.)

4. Paragraph 34, the '222 patent was not made available to the examiner in the prosecution of the '965 patent. (The what element.)

Missing from the who, what, where, when and how allegations are particular facts to describe

specifically how the two patents are inconsistent, to specifically describe where it is found in the patent descriptions that the two patents are inconsistent, and to specifically describe how the two patents are inconsistent. Furthermore there are no factual allegations to explain how it is known that the PTO would not have issued the '965 patent if only it had known about the '222 patent.

In summary, the what, where, and how allegations are not sufficiently particular. Likewise missing are specific allegations of an affirmative misrepresentation of a material fact, specific allegations of a failure to disclose material information, or specific allegations of the submission of false material information. Specific allegations that the conduct occurred with a specific intent to deceive the PTO are missing, i.e. the underlying facts in the proposed amendment do not require, or even allow, as the only reasonable inference that there was a specific intent to deceive the PTO. There is no explanation to justify the conclusion that the PTO would not have issued the '965 patent if it had been aware of the '222 patent. The materiality allegations are missing.

It is ORDERED that Enduro's motion to amend to assert inequitable conduct both as an additional affirmative defense and as an additional counterclaim is DENIED without prejudice (Doc. 28).

Dated November 14, 2011.

BY THE COURT:

_____
John Simko
U.S. Magistrate Judge