UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| HANSEN MANUFACTURING CORP., | ) ) ) | CIV. 11-4030-KES |
| Plaintiff, | ) ) | ORDER GRANTING DEFENDANT'S SECOND MOTION TO STAY |
| vs. | ) ) ) | PROCEEDING AND DENYING DEFENDANT'S SECOND MOTION |
| ENDURO SYSTEMS, INC., d/b/a Intersystems, | ) ) ) | TO AMEND |
| Defendant. | ) ) | |

Plaintiff, Hansen Manufacturing Corp., filed suit against defendant, Enduro Systems, Inc., d/b/a Intersystems (Enduro), alleging a patent infringement cause of action. Enduro moved to stay this action pending reexamination of the patent-in-suit by the Patent and Trademark Office (PTO). Docket 32. This court referred the motion to Magistrate Judge John. E Simko for ruling. Docket 36. Magistrate Judge Simko found that the motion was premature because it was unknown whether the PTO would grant Enduro's request for reexamination, and, thus, he denied the motion without prejudice. Docket 40. The PTO granted Enduro's request for *ex parte* reexamination on November 14, 2011. Docket 42-1.

Enduro moves to stay this proceeding pending reexamination of the patent-in-suit by the PTO, or in the alternative, reconsideration of Magistrate Judge Simko's order denying the motion to stay. Docket 42. Hansen opposes

the motion. The motion to stay is granted. Enduro also moves to amend its answer to allege an affirmative defense of inequitable conduct, or in the alternative, reconsideration of Magistrate Judge Simko's order denying Enduro's first motion to amend without prejudice. Docket 44. Hansen opposes the motion. Because of the PTO's reexamination of the patent-in-suit, the motion to amend is denied without prejudice.

## BACKGROUND

Hansen's U.S. Patent No. 6,044,965 ('965 patent or patent-in-suit) is entitled "Troughing Idlers for Belt Conveyors." The patent is directed to an enclosed belt conveyor system with a horizontal shaft and cantilevered side rollers supporting a conveyor belt. The '965 patent covers Hansen's commercially-successful HiLife® conveyor system.

Hansen filed suit on February 28, 2011, alleging that Enduro's RollerFLO 3i product, which Enduro released three days before Hansen filed its complaint, infringes claims 1-3 of the '965 patent. Enduro and Hansen are direct competitors.

During the parties' planning meeting on June 20, 2011, Enduro stated its preference for trial to occur as soon as August 2012. Docket 25. The parties are currently in the discovery phase of litigation. Hansen has provided its infringement contentions, and Enduro has served its response. Enduro served its invalidity contentions on November 28, 2011, and Hansen has responded.

In granting Enduro's *ex parte* reexamination request,[1] the PTO found substantial new questions of patentability (SNQP) affecting claims 1-18 of the '965 patent. Docket 42-1 at 5. The PTO noted that because the five patents relied on in the request for reexamination were not discussed in the '965 patent, all five patents are new art or old art being viewed in a new or different light. Docket 42-1 at 7-8.

## DISCUSSION

Under 35 U.S.C. § 302, "[a]ny person at any time" can request the PTO to reexamine a patent. At the conclusion of the reexamination, the PTO will issue a certificate finding one of the following three scenarios: (1) the claims are found unpatentable and are canceled; (2) the claims are found patentable and are confirmed; or (3) amendments or new claims found to be patentable can be incorporated into the patent. 35 U.S.C. § 307.

District courts have the "inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted). Congress intended courts to liberally grant stays

---

[1] The other type of reexamination, *inter partes* reexamination, is not available for the '965 patent because that type of reexamination is only available for patents issued from applications filed on or after November 29, 1999. *See* the Manual of Patent Examining Procedure, § 2601, Docket 47-2. Hansen filed its patent application on February 18, 1998. Docket 47 at 6. Thus, only the rules for *ex parte* reexamination are applicable here.

pending PTO reexamination. *Inteplast Group, LTD v. Coroplast, Inc.*, No. 4:08-cv-1413, 2009 WL 1774313, at *1 (E.D. Mo. June 23, 2009) ("[S]everal courts have observed that sponsors of the patent reexamination legislation favored stays by district courts pending reexamination in order to settle disputes more quickly at a lower cost, and to provide courts with the benefits of the PTO's experience." (citing *Lifeline Techs., Inc. v. Archer Daniels Midland Co.*, No. 4:08-cv-279, 2009 WL 995482, at *2 (E.D. Mo. Apr. 14, 2009))). Courts have followed this congressional preference and routinely grant stays when the PTO has granted reexamination. *Card Tech. Corp. v. DataCard Corp.*, No. 05-2546, 2007 WL 2156320, at *3 (D. Minn. July 23, 2007) ("[C]ourts 'routinely' grant such stays where the circumstances warrant." (citing *CNS, Inc. v. Silver Eagle Labs, Inc.*, No. Civ. 04-968, 2004 WL 3631121, at *1 (D. Minn. Nov. 29, 2004))); *see also Middleton, Inc. v. Minn. Mining & Mfg. Co.*, No. 4:03-cv-40493, 2004 WL 1968669, at *3 (S.D. Iowa, Aug. 24, 2004) ("Courts have routinely stayed infringement actions pending the outcome of reexamination proceedings" (citing *Softview Computer Prods. Corp. v. Haworth, Inc.*, No. 97-civ-8815, 2000 WL 1134471, at *2 (S.D.N.Y. Aug. 10, 2000))).

Courts consider three factors in deciding whether a stay should be granted: "(1) whether discovery is complete and a trial date has been set; (2) whether a stay of litigation will simplify the issues in question and facilitate the trial of the case; and (3) whether a stay would unduly prejudice the non-

moving party or would present a clear tactical disadvantage for that party." *Inteplast*, 2009 WL 1774313, at *1 (citing *Watlow Elec. Mfg. Co. v. Ogden Mfg. Co.*, No. 4:05-cv-2094, 2006 WL 1892546, at *1 (E.D. Mo. July 10, 2006)). "In other words, based on these factors the Court determines whether benefits of a stay outweigh the associated costs." *Middleton*, 2004 WL 1968669, at *3.

**1.  Timing**

Under the first factor, the court considers at what point in the litigation the reexamination was requested, including whether discovery is complete and whether a trial date has been set. The parties are currently in the discovery phase of litigation. They have provided their infringement contentions and invalidity contentions to one another. While Hansen has retained an expert, Dr. Gary Anderson of South Dakota State University, the deadline for expert reports and depositions is April 27, 2012, and there is no indication that Hansen has expended significant resources in preparing for expert discovery or that the parties have completed the extensive expert discovery necessary in patent infringement cases. Moreover, a *Markman* hearing has not been held, and motions in limine are not due until June 18, 2012.

Because the parties are still in the initial stages of litigation, the first factor weighs in favor of granting the stay. *See, e.g., CNS, Inc.*, 2004 WL 3631121, at *1 (granting a stay where the case was "in the early stages of discovery and there [were] obvious efficiencies to be gained" by waiting for the

PTO's decision); *cf. Middleton*, 2004 WL 1968669, at *5, *10 (granting a stay even though the summary judgment motions had been fully briefed and discovery was essentially complete because of the efficiencies to be gained in waiting on the PTO's decision).

Hansen argues that Enduro's request for reexamination is a delay tactic. Because the reexamination process can take a substantial amount of time to resolve, a potential exists "for the use of the reexamination process as a dilatory tactic," which some courts consider before granting a stay. *See, e.g., BarTex Research, LLC v. FedEx Corp.*, 611 F. Supp. 2d 647, 650 (E.D. Tex. 2009) (considering whether an *inter partes* reexamination was a dilatory tactic). In its invalidity contentions, Enduro added three new prior art references beyond that cited in its reexamination request, which Hansen claims proves that Enduro's request for reexamination is a delay tactic: "Intersystems apparently plans serial, piecemeal attacks on the validity of Hansen's patent . . . . The danger to Hansen is particularly pronounced because *ex parte* proceedings (unlike *inter partes* reexamination) do not estop the requestor (Intersystems) from later arguing in litigation the same or additional prior art-based invalidity theories." Docket 47 at 2 (emphasis omitted).

Enduro responds that, as for two of the three references, it did not cite two product brochures from a third party showing a prior use because prior

use references (as opposed to prior art) cannot be cited to the PTO in the request for an *ex parte* reexamination. *See* 35 U.S.C. § 301. As a result, Enduro cited the brochures in its initial invalidity contentions. As to the third reference, Enduro states that it found a prior art patent after it filed for reexamination.

In reviewing the facts, it does not appear that Enduro requested the reexamination as a delay tactic. If Hansen believes that the three prior art references should be before the PTO, it can submit those references to the PTO by affirming that the two product brochures qualify as prior art printed publications. *See* 37 C.F.R § 1.56 (discussing the duty to submit relevant documents to the PTO). Because this litigation is in the early states and the court finds that Hansen has presented no facts showing that Enduro requested reexamination to delay this litigation, the first factor weighs in favor of granting the motion to stay.

**2.     Simplify the Issues**

Under the second factor, the court considers whether the PTO's reexamination will simplify the issues. Courts have identified various advantages that may result from staying patent litigation during the PTO's reexamination:

> 1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

> 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> 4. The outcome of the reexamination may encourage a settlement without the further use of the Court.
>
> 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
>
> 6. Issues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination.
>
> 7. The cost will likely be reduced both for the parties and the Court.

*Middleton*, 2004 WL 1968669, at *3 (citations omitted); *Card Tech.*, 2007 WL 2156320, at *4 (same). The court finds that all of these factors weigh in favor of granting the stay.

Even if reexamination does not result in the elimination of some, if not all, of the issues remaining in the pending litigation, the reexamination will likely result in a narrowing and simplifying of the issues before the court. *Middleton*, 2004 WL 1968669, at *3 (citations omitted). The PTO's expertise will also be helpful to the court on any issues that remain. *Id.* (citing *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983)).

Moreover, the reexamination process could lead to new issues that are not now before the court. *See, e.g., BAE Sys. Elecs. Ltd. v. Rockwell Collins, Inc.*, No. 3:03-cv-0694, 2004 WL 1809812, at *1 (N.D. Tex. Aug. 12, 2004)

(reasoning that a PTO reexamination resulted in new claims being issued). If the PTO allows amended or new claims, the court may need to construe, as well as determine validity and infringement of, these claims, and the PTO's expertise will assist the court in those determinations.

Hansen argues that any simplification is speculative because the PTO's SNQP determination does not mean that the PTO will reject the '965 patent. While Hansen is correct that the PTO's finding of SNQP is not a rejection of the '965 patent, the court will "have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims," if the PTO does not reject the '965 patent or any of its claims. *VData, LLC v. Aetna, Inc.*, No. 06-1701, 2006 WL 3392889, at *6 (D. Minn. Nov. 21, 2006) (internal quotation omitted); *see also Ethicon*, 849 F.2d at 1428 (reasoning that simplification results not only "from the cancellation, clarification, or limitation of claims," but also from the "valuable analysis to the district court, which it could consider in reaching its determination." (citations omitted)).

Hansen further contends that unlike *inter partes* reexamination, there is no estoppel effect in *ex parte* reexamination, which means that if the PTO upholds all claims in the patent, Enduro could raise the same issues before the PTO as it could in this action, which would waste resources. But Hansen will already be prepared to answer any such claims because Enduro will have raised them before the PTO and, thus, Hansen should not need to engage in

substantial new discovery or research to defend Enduro's claims before the court. Thus, the second factor weighs in favor of granting the stay.

### 3.     Prejudice

Under the third factor, Enduro argues that Hansen will not be prejudiced because Hansen, like Enduro and the court, will conserve resources by waiting for the outcome of the PTO's reexamination. Hansen argues that it will be prejudiced because Enduro will be allowed to continue selling its product, meaning that Enduro will not only continue infringing on the '965 patent but also will harm Hansen's competitiveness.

On the one hand, if the PTO finds that Hansen's claims are unpatentable and, thus, cancels the claims, both the parties and the court will have saved substantial resources if the stay is granted. According to the PTO, when a third party requests reexamination, 24 percent of all claims are confirmed, 12 percent of all claims are cancelled, and 64 percent of all claims are changed. Docket 47-4 at 2. Thus, the likelihood that some claims are cancelled or changed is 76 percent, while the likelihood that all claims are confirmed is 24 percent.

On the other hand, if the PTO finds the claims patentable and confirms the '965 patent, a process that can take an average of 25.6 months,[2] Hansen

---

[2] According to the most recent statistics, the average pendency of an *ex parte* reexamination, described as the filing date to the certificate issue date, is 25.6 months, while the median pendency is 19.9 months. Docket 47-4 at 2.

will have been delayed in the resolution of its patent infringement claims. But, as stated above, the PTO reexamination proceedings will likely have clarified any issues in the '965 patent, which would assist the court or jury in determining the outcome of this case.

Hansen, citing *Tesco Corp. v. Weatherford Int'l Inc.*, 599 F. Supp. 2d 848 (S.D. Tex. 2009), *George Kessel Int'l, Inc. v. Classic Wholesales, Inc.*, 544 F. Supp. 2d 911 (D. Ariz. 2008), and *BarTex*, 611 F. Supp. 2d 647, argues that because Enduro is a direct competitor, it could continue to infringe on the '965 patent, thereby causing harm to Hansen. Two of the cases involve *inter partes* reexaminations, which can take substantially longer to complete than an *ex parte* reexamination. *See Tesco*, 599 F. Supp. 2d at 851; *BarTex*, 611 F. Supp. 2d at 651-52. In *George Kessel*, the court found that because the PTO's reexamination would have no effect on the plaintiffs' trademark infringement claim, the plaintiffs would be prejudiced by the delay. 544 F. Supp. 2d at 913. Here, Hansen only alleges a patent infringement claim and, thus, the PTO's determination on reexamination could have an effect on Hansen's entire complaint.

Moreover, Hansen acknowledges that Enduro has only delivered one RollerFLO 3i and Enduro's "infringing and inferior copy of Hansen's patented invention has yet to enjoy success in the market[.]" Docket 47 at 12. The facts

11

do not support a finding of prejudice to Hansen if this case is stayed pending resolution of the PTO's reexamination.

Hansen further contends that monetary damages are insufficient to protect it against harm from continued infringement. Docket 47 at 8, 10. The fact that Hansen did not offer more than conclusory statements about its loss of competitiveness, however, undercuts its claims that it will be prejudiced if a stay is granted. *See, e.g., Generac Power Sys., Inc. v. Kohler Co.*, ___ F. Supp. 2d ___, No. 10-C-0947, 2011 WL 2648596, at *5 (E.D. Wis. July 5, 2011) (reasoning that a company resisting a stay pending PTO reexamination "must provide more than conclusory arguments about the adverse impact that [the other party's] manufacturing and selling of the allegedly infringing product will have on its market share." (citing *Freedom Scientific, Inc. v. GW Micro, Inc.*, No. 8:08-cv-1365, 2009 WL 2423095, at *2 (M.D. Fla. July 29, 2009))). Hansen offers no facts suggesting that Enduro would be unable to pay a monetary damages award, which would cure any prejudice caused by the delay if Hansen is ultimately successful in this action. *See, e.g., id.* ("Should [the] plaintiff ultimately prevail, it will be able to recover any damages it incurs as the result of [the] defendants' continued manufacture and sale of the allegedly infringing product." (alterations in original) (citing *Seaquist Closures LLC v. Rexam Plastics*, No. 08-C-0106, 2008 WL 4691792, at *2 (E.D. Wis. Oct. 22, 2008))); *see also Graceway Pharm., LLC v. Perrigo Co.*, 722 F. Supp. 2d 566,

577 (D.N.J. 2010) ("[L]oss of market share and price erosion are economic harms and are compensable by money damages.").[3] Thus, the third factor weighs in favor of granting the stay.

## CONCLUSION

Enduro moves for a stay pending the outcome of the PTO's reexamination. All three factors weigh in favor of granting the stay because this action is in the early stages of litigation, the PTO's decision will simplify the issues, and Hansen will not be prejudiced from a stay. Thus, Enduro's motion for a stay is granted and the court need not address Enduro's alternative motion to reconsider Magistrate Judge Simko's denial of Enduro's first motion for reconsideration. Because this action will be stayed pending the outcome of the PTO's reexamination, Enduro's second motion to amend is denied without prejudice. Enduro may move to amend its answer, if

---

[3] Hansen cites numerous cases allegedly holding that monetary damages are insufficient to cure prejudice. These cases, however, do not stand for the proposition that monetary damages are insufficient if an *ex parte* reexamination results in the PTO's holding all claims patentable and the patent-holder succeeds in a successful action in the district court. *See, e.g.*, *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149-50 (Fed. Cir. 2011) (discussing the preliminary injunction remedy for patent infringement cases); *Quantronix, Inc. v. Data Trak Techs., Inc.*, 536 F. Supp. 2d 1039, 1049-50 (D. Minn. 2008) (same); *Reebok Int'l Ltd. v. Baker Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994) (same); *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1329 (Fed. Cir. 2008) (discussing a permanent injunction); *BarTex*, 611 F. Supp. 2d at 652 (reasoning that "damages alone may not compensate [the patent-holder] for a lengthy delay" in an *inter partes* examination, which can take 6.5 years).

necessary, after the PTO issues a decision in the '965 patent reexamination. Accordingly, it is

ORDERED that defendant's motion to stay litigation (Docket 42) is granted. This action is stayed pending reexamination of United States Patent No. 6,044,065 by the PTO.

IT IS FURTHER ORDERED that counsel for the parties will submit a joint report to the court every four months describing the status of the proceeding before the PTO, the first of which will be filed no later than four months from the date of this order.

IT IS FURTHER ORDERED that defendant's second motion to amend (Docket 44) is denied without prejudice.

Dated February 6, 2012.

                              BY THE COURT:

                              /s/ *Karen E. Schreier*
                              KAREN E. SCHREIER
                              CHIEF JUDGE